[Cite as *State v. Zielinski*, 2016-Ohio-2668.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                   Court of Appeals No. L-14-1108

      Appellee                             Trial Court No. CR0201302235

v.

David Zielinski                                 **DECISION AND JUDGMENT**

      Appellant                            Decided:  April 22, 2016

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Steven Casiere, for appellant.

* * * * *

**OSOWIK, J.**

**{¶ 1}** This is an appeal from a judgment of the Lucas County Court of Common

Pleas that found appellant David Zielinski guilty of one count each of murder, aggravated

burglary, kidnapping and felonious assault.  Each conviction carried a firearm

specification.  For the reasons that follow, the judgment of the trial court is affirmed.

**{¶ 2}** On July 13, 2013, appellant was indicted on charges of aggravated murder in violation of R.C. 2903.01(A), aggravated burglary in violation of R.C. 2911.11(A)(2), kidnapping in violation of R.C. 2905.01(B)(1), and attempt to commit murder in violation of R.C. 2903.02(A), 2929.02 and 2923.02. All charges carried firearm specifications pursuant to R.C. 2941.145. At trial, defense counsel requested a jury instruction on voluntary manslaughter but the instruction was refused. The trial court instead instructed the jury to consider the lesser included offense of murder.

**{¶ 3}** The jury found appellant not guilty of aggravated murder but guilty of the lesser included offense of murder, guilty of aggravated burglary and kidnapping, and not guilty of attempted murder but guilty of felonious assault, with firearm specifications attached to each offense. The trial court sentenced appellant to 15 years to life for the murder conviction, 11 years for the aggravated burglary conviction, 11 years for the kidnapping conviction and 8 years for the felonious assault conviction. All sentences were ordered to be served consecutively. The trial court further found that the four three-year sentences for the firearm specifications were attached to separate transactions, and therefore ordered that they should be served consecutively to one another. This timely appeal followed.

**{¶ 4}** Appellant sets forth the following assignments of error:

I. Appellant was denied due process and a fair trial by the trial court's refusal to instruct the jury as to voluntary manslaughter.

2.

II. Appellant was denied due process and a fair trial after the state provided legally insufficient evidence to sustain appellant's conviction for aggravated burglary.

III. The trial court erred when it refused to merge firearm specifications which arose out of a single transaction.

{¶ 5} In support of his first assignment of error, appellant asserts that the trial court should have instructed the jury on voluntary manslaughter because there was sufficient evidence upon which the jury could have acquitted him of murder while finding him guilty of voluntary manslaughter. Appellant argues that fatally shooting someone after having encountered that individual in the act of adultery with the shooter's spouse is a "classic example" which would support an instruction on voluntary manslaughter. A review of the testimony presented at trial is necessary here in order to determine this issue.

{¶ 6} It is undisputed that the victim, Michael Jackson, was shot, stabbed and pistol-whipped while in bed with appellant's estranged wife, Amber Hayes, in the home appellant and Hayes had shared after their marriage and before their separation. Appellant and Hayes had married on June 7, 2013. At that time, Hayes bought a house on Central Avenue in Toledo where the couple then lived. On June 25, 2013, the couple argued and appellant left to stay with his mother in Swanton, Ohio. Appellant did not stay at the house again. Shortly after appellant moved out, Hayes began a relationship with Jackson. Appellant was aware of the relationship.

3.

**{¶ 7}** Hayes testified that at approximately 2:00 a.m. on July 14, 2013, she and Jackson returned to the Central Avenue house after socializing with friends elsewhere. Shortly after arriving at the house, they went to bed together. Hayes testified that she and Jackson were in bed when she heard a noise on the stairs to the second floor where the bedroom was located. Hayes then looked up and saw appellant standing by the bed. She testified that appellant leaned over her and stretched his arm toward Jackson. Hayes heard four or five gunshots in rapid succession and saw Jackson try to sit up. Jackson was holding his stomach and moaning. Appellant hit Hayes in the face and on the back of her head. He then pointed his gun at her while forcing her to walk down the stairs and out of the house. Appellant told Hayes to back out of the driveway, but as she was backing up he told her to stop because he had left his knife in the house. Appellant made Hayes go back upstairs, where she saw Jackson lying motionless in the bedroom. Appellant then hit Jackson in the head twice. Appellant and Hayes left the house again and appellant told Hayes to drive him to his truck. When appellant got out of the car and walked to the truck, Hayes backed up and sped away. Appellant fired several shots into her car as she drove away. Hayes called 911 and eventually was taken to the hospital where she was treated for bruises, cuts and glass embedded in her legs.

**{¶ 8}** Appellant's friend Paul Cook testified that on the night of July 13, 2013, he and appellant were drinking together in Swanton when appellant said he was going to beat up the man his wife was sleeping with. Cook rode along, and when appellant stopped the truck he told Cook to wait there. Appellant got out, smoked a cigarette and

walked away carrying a rope, a gun and a knife. After appellant left, Cook called his mother, who picked him up.

{¶ 9} Appellant testified that on the night of July 13, 2013, he was at his mother's home in Swanton talking to Paul Cook. Eventually, appellant decided to go to Toledo and confront Jackson, whom appellant knew was involved in a relationship with Hayes. Appellant testified that he took a gun and a knife in order to protect himself because he did not know "what might happen" when he went into the house. He denied intending to kill Jackson when he got there. He stated that he wanted to get Jackson out of the house and try to work something out with his wife. Appellant parked his truck around the corner from the house so that Hayes would not hear him pull up since she had said that if he came to the house she would call the police. He further testified that after he parked he smoked a cigarette and began to sober up. He testified that, out of concern for Cook's safety, he told Cook to call his mother for a ride because he did not know what might happen when he went into the house. Appellant walked to Hayes' house alone. Contrary to Cook's testimony, appellant denied taking a rope with him.

{¶ 10} Appellant unsuccessfully tried to open two of the doors with his key. He claimed that he knocked on the front door but there was no answer. Appellant saw an open window on the first floor and removed a fan set in the window so that he could climb in. He testified that, once inside, he could hear Hayes and Jackson having intercourse. He waited until they were quiet, "trying to keep it together," before going upstairs, where he found them in bed together. Appellant testified that Jackson called

5.

him a name and they began to struggle. Appellant stated he gave Jackson "a poke" in the leg with his knife. (The coroner's report indicated that Jackson suffered a 4.5-inch deep stab wound in his leg as well as 1.5-inch wound in the buttock area.) Jackson then turned the knife toward appellant and stabbed him in the leg. Appellant testified that he then "became unglued in there," shot Jackson multiple times, and "pistol whipped" him after he was dead.

{¶ 11} Voluntary manslaughter is defined in R.C. 2903.03 as follows: "No person, while under the influence of sudden passion or in a sudden fit of rage, either of which is brought on by serious provocation occasioned by the victim that is reasonably sufficient to incite the person into using deadly force, shall knowingly cause the death of another."

{¶ 12} Appellant argues that there was sufficient evidence upon which a jury could have acquitted him of murder while finding him guilty of voluntary manslaughter. Appellant asserts that listening to Hayes and Jackson engaging in intercourse for five minutes after he climbed in the window, and then finding them in bed together, constituted provocation that was "reasonably sufficient" to incite him into using deadly force.

{¶ 13} A trial court's denial of a requested jury instruction may not be reversed unless it was an abuse of discretion under the facts and circumstances of the case. *See State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989). An abuse of discretion is more than an error of law or judgment; it implies that the trial court's judgment was

6.

unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶ 14} An instruction on voluntary manslaughter is appropriate when "the evidence presented at trial would reasonably support both an acquittal on the charged crime of murder and a conviction for voluntary manslaughter." *State v. Shane*, 63 Ohio St.3d 630, 632, 590 N.E.2d 272 (1992).

{¶ 15} "Before giving a jury instruction on voluntary manslaughter in a murder case, the trial judge must determine whether evidence of reasonably sufficient provocation occasioned by the victim has been presented to warrant such an instruction." *Shane*, paragraph one of the syllabus. "The trial judge is required to decide this issue as a matter of law, in view of the specific facts of the individual case. The trial judge should evaluate the evidence in the light most favorable to the defendant, without weighing the persuasiveness of the evidence." *Id*. at 637, citing *State v. Wilkins*, 64 Ohio St.2d 382, 388, 415 N.E.2d 303 (1980).

{¶ 16} Any provocation by the victim must be sufficient to arouse the passions of an ordinary person beyond his or her control. *Shane* at 634-35. The provocation must be reasonably sufficient to incite the defendant to use deadly force. *Id*. at 635.

{¶ 17} The trial court would have been required to give an instruction on voluntary manslaughter if the evidence presented at trial demonstrated that appellant killed Jackson while under the influence of a sudden passion or fit of rage caused by provocation from Jackson that was serious enough to incite him into using deadly force.

7.

Appellant suggests that Jackson provoked him sufficiently to incite him to shoot Jackson six times from a distance of no more than two feet, stab him twice with a knife with a blade longer than 4.5 inches, and strike him in the head twice with a hard object.

{¶ 18} The facts deduced at trial, however, negate the idea that appellant acted with sudden passion or in a sudden fit of rage provoked by Jackson. Instead, according to appellant's own testimony, while drinking with a friend in Swanton, he mulled over driving to Toledo, got up and made the 45-minute drive to Hayes' neighborhood, parked his truck around the corner from the house, smoked a cigarette, walked to the house with a gun and knife, and climbed through a window after trying his key in several locks. Appellant, believing Hayes was having sexual intercourse with Jackson, sat downstairs for at least five minutes until he thought they were quiet before going upstairs to the bedroom. Appellant then exchanged verbal insults with Hayes and Jackson before the deadly assault began.

{¶ 19} Based on the foregoing, we conclude that the trial court did not abuse its discretion in not instructing the jury on voluntary manslaughter. Accordingly, appellant's first assignment of error is not well-taken.

{¶ 20} In his second assignment of error, appellant asserts that the state did not present sufficient evidence to support his conviction for aggravated burglary.

{¶ 21} On appeal, the test regarding sufficiency of the evidence is whether, when "viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable

8.

doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. Criminal convictions should not be overturned on the basis of insufficient evidence unless reasonable minds could not reach the same conclusion as the trier of fact. *State v. Smith*, 6th Dist. Lucas No. L-14-1119, 2015-Ohio-2676, ¶ 8.

**{¶ 22}** R.C. 2911.11, aggravated burglary, states in relevant part:

(A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:

(1) The offender inflicts, or attempts or threatens to inflict physical harm on another;

(2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

**{¶ 23}** Appellant argues that because neither he nor Hayes had filed for divorce and there was no court order prohibiting him from entering the residence, the trespass requirement of the statute could not be satisfied. Appellant does not contest any of the other elements of the statute.

**{¶ 24}** The house in which the burglary and murder occurred was owned by Hayes. Hayes testified that after appellant failed to come home for two days between June 23 and 25, 2013, she packed his belongings and arranged for them to be delivered to his mother's home in Swanton. Appellant left the house, leaving his keys behind, and

9.

went to stay with his mother. Appellant did not spend any nights at the home after that. While Hayes' legal title is not dispositive, other evidence supports the conclusion that she exercised custody and control of the house. Appellant testified that when he was taken for medical treatment after his arrest he provided his mother's address as his own. Appellant admitted that he parked his truck away from the house and entered the residence by stealth because Hayes had threatened to call the police if he came back. He clearly understood that Hayes considered herself to have exclusive custody and control of the house.

{¶ 25} Based on the foregoing, we find, after viewing the evidence in a light most favorable to the prosecution, that any rational trier of fact could have found the essential elements of the crime of aggravated burglary proven beyond a reasonable doubt. Accordingly, appellant's second assignment of error is not well-taken.

{¶ 26} In his third assignment of error, appellant asserts that the firearm specifications should have merged because the four felonies were committed as part of a single act or transaction.

{¶ 27} In support, appellant cites R.C. 2929.14(B)(1)(b), which states in relevant part that "*[e]xcept as provided in division (B)(1)(g) of this section*, a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction." (Emphasis added.)

{¶ 28} In making his argument, appellant ignores the above reference to division (B)(1)(g), which applies in this case and disproves his argument. Division (B)(1)(g)

10.

states, in relevant part, that if an offender is convicted of two or more specified felonies (two of which are murder and felonious assault), the sentencing court shall impose the prison term specified for each of the two most serious specifications "*and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications*."  (Emphasis added.)

{¶ 29} Appellant was convicted of two offenses listed in R.C. 2929.14(B)(1)(g)—murder and felonious assault.  Therefore, the trial court not only was required to impose separate sentences for at least two firearm specifications but possessed the discretion to impose terms "for any or all of the remaining specifications."

{¶ 30} As to appellant's argument that the acts committed in this case were part of the same act or transaction, the record reflects that the trial court deliberately and clearly articulated its reasons for imposing the consecutive firearm specifications.  As the court noted, appellant entered the house with a gun, thereby completing the act of aggravated burglary.  He then went upstairs and fatally shot Jackson, thereby committing the separate act of murder.  Appellant then committed the separate act of kidnapping when he brandished his gun and forced Hayes to leave the house with him and drive him to his truck.  Lastly, appellant committed the final separate offense of felonious assault when he fired shots at Hayes as she escaped by driving away.  These offenses were not part of "the same act or transaction" for purposes of R.C. 2929.14.  The facts set forth above clearly supported the trial court's order imposing four consecutive firearm specifications.

11.

**{¶ 31}** Based on the foregoing, appellant's third assignment of error is not well-taken.

**{¶ 32}** On consideration whereof, the judgment of the Lucas County Court of Common Pleas is affirmed.  Costs of this appeal are assessed to appellant pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.

_____
JUDGE

Arlene Singer, J.

_____
JUDGE

Thomas J. Osowik, J.
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.