[Cite as *State v. Smith*, 2018-Ohio-3983.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                     Court of Appeals No. L-16-1306
                                                                          L-16-1307
            Appellee                                                      L-16-1308

v.                                                Trial Court Nos. CR0201601974
                                                                   CR0201602143
William E. Smith                                                    CR0201603061

            Appellant                             **DECISION AND JUDGMENT**

                                                  Decided:  September 28, 2018

                                  * * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

James J. Popil, for appellant.

                                  * * * * *

**MAYLE, P.J.**

{¶ 1} Defendant-appellant, William E. Smith, appeals the December 6, 2016

judgments of the Lucas County Court of Common Pleas.  For the reasons that follow, we

affirm.

**{¶ 2}** William Smith was convicted of a number of offenses arising from two separate incidents. The first occurred on April 7, 2016, and the second occurred on May 6, 2016.

### A. April 7, 2016

**{¶ 3}** On April 7, 2016, Smith was a passenger in a vehicle that was stopped by Toledo police officers, David Ford and Justin Sciplin. The officers observed the smell of marijuana and called for the K-9 unit to conduct a search of the outside of the vehicle. The K-9 alerted to the presence of intoxicants, and Smith and the driver of the vehicle were ordered out of the car. Smith was patted down by Officer Sciplin who found a loaded firearm in Smith's front pocket. The vehicle was searched and a second firearm was found between the passenger seat and the center console. Ammunition, a jar of marijuana, and a scale were also discovered, and Smith was found to be in possession of a large amount of cash.

### B. May 6, 2016

**{¶ 4}** Smith used to work with a man named B.S. On May 6, 2016, B.S. was doing drugs at the home of H.L. on Quigley Street in Holland, Ohio. H.L.'s friends, Ma.Li. and Mi.La., were also there. B.S. was in the bathroom using heroin for approximately 30 minutes. He had additional heroin in a bag that he did not take with him into the bathroom, but when he returned, it was not there. When he discovered that his heroin was gone, B.S. hit H.L. An argument ensued, and the other two men broke it up.

2.

{¶ 5} B.S. then called Smith, from whom B.S. occasionally bought marijuana, and told Smith that the men had stolen $300 from him. He told Smith that if he could help him get it back, there were drugs and money at H.L.'s home that Smith could keep. B.S. intentionally omitted the fact that his heroin had been stolen for fear that Smith would decline to help him.

{¶ 6} Smith and another man named Charles (whose last name B.S. did not know) went to a park near B.S.'s home, and B.S. met them there. They started to walk to H.L.'s home, then decided to drive B.S.'s truck. Smith and Charles put on gloves that they found in B.S.'s truck; Charles wore two gloves and Smith wore one—a Nike glove. When they arrived at H.L.'s home, B.S. knocked on the door. H.L. answered, B.S. stepped inside, then Smith and Charles "barged in." Smith pulled out a gun and told everyone to get down. One of the men did not immediately comply, so B.S. hit him because he was afraid that Smith would shoot him. The man fell to the floor.

{¶ 7} Smith directed Charles and B.S. to search the house. They did not find any drugs or money, but they took a television, an Xbox 360, and the men's IDs, phones, and car keys. They loaded the stolen items into B.S.'s truck and went back to his house. They then transferred the items into the car that Smith and Charles had driven there. They returned the gloves to B.S. B.S. threw them into the creek at the nearby park.

{¶ 8} At some point, B.S. became paranoid and began hallucinating, presumably as a result of the drugs he had taken over the course of the day: heroin, "molly," bath salts, cocaine, and unspecified pills. Believing police dogs were chasing him, he ran into

3.

the woods.  The next day, someone saw him and contacted the sheriff's department.  The sheriff's department called an ambulance and B.S. was transported to a nearby hospital.

{¶ 9} At the hospital, B.S. told sheriff's deputies about the burglary.  Detective Dave Kowalski, who had already been to the Quigley Street home to investigate the burglary, went to the hospital and spoke with B.S.  B.S. told him about the incident and identified his accomplices as Smith and Charles.  He told Detective Kowalski that Smith had discarded one of the cell phones at the park near B.S.'s home.  Detective Kowalski searched the park and found a single Nike glove in the creek.  He collected it.  B.S. later identified it as the one Smith wore during the burglary.

## C.  The Trial

{¶ 10} Smith was charged with a number of offenses arising from these two incidents and was prosecuted under three different case numbers.  The cases were joined and tried to the bench on November 14, 15, 16, and 21, 2016.  Eleven witnesses testified and numerous exhibits were admitted.  In its brief, the state includes a chart summarizing the cases, charges, findings, and sentences.  We replicate portions of that chart below:

| Lucas County Case No. | Count | Charge | Finding | Sentence |
|---|---|---|---|---|
| CR16-1974 (the April 7, 2016 incident) | One | Carrying concealed weapons (R.C. 2923.12(A)(2) and (F), a fourth-degree felony) | Guilty | 12 months to be served concurrently with the sentence in count 4 and concurrently with sentences in case Nos. CR16-3061, CR16-2143, and CR16-1436[1] |
| | Two | Having weapons under disability (R.C. 2923.13(A)(2), a third-degree felony) | Nolle Prosequi | |
| | Three | Tampering with evidence (R.C. 2921.12(A)(1) and (B), a third-degree felony) | Nolle Prosequi | |
| | Four | Trafficking in marijuana (R.C. 2925.03(A)(2) and (C)(3)(a), a fifth-degree felony) | Guilty | 12 months to be served concurrently with the sentence in count 1 and concurrently with sentences in case Nos. CR16-3061, CR16-2143, and CR16-1436 |
| | Five | Participating in a criminal gang (R.C. 2923.42(A) and (B), a second-degree felony) | Not Guilty | |

---

[1] Case No. CR0201601436 arose from a November 2015 incident for which Smith was indicted on March 7, 2016.

| | | | | |
|---|---|---|---|---|
| CR16-2143 (the May 6, 2016 incident) | One | Aggravated burglary (R.C. 2911.11(A)(2), a first-degree felony) with a firearm specification (R.C. 2941.145) | Guilty | 3 years with an additional 3 years for the firearm specification, to be served concurrently with the sentence for count 2 and consecutively to the specifications for an aggregate term of 9 years |
| | Two | Aggravated robbery (R.C. 2911.01(A)(1), a first-degree felony) with a firearm specification (R.C. 2941.145) | Guilty | 3 years with an additional 3 years for the firearm specification, to be served concurrently with the sentence for count 2 and consecutively to the specifications for an aggregate term of 9 years |
| CR16-3061 (the April 7, 2016 incident) | One | Having weapons under disability (R.C. 2923.13(A)(3) and (B), a third-degree felony) | Guilty | 12 months, to be served concurrently with the sentences in case Nos. CR16-1436, CR16-2143, and CR16-1974 |

{¶ 11} Smith appealed, the appeals were consolidated, and Smith assigns the following errors for our review:

I.  THE CONVICTIONS AGAINST APPELLANT WERE NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

II.  THE CONVICTIONS AGAINST APPELLANT WERE NOT SUPPORTED BY THE SUFFICIENCY OF THE EVIDENCE.

III.  APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL.

6.

IV. THE TRIAL COURT ERRED IN SENTENCING
APPELLANT TO TWO MANDATORY CONSECUTIVE TERMS ON
THE FIREARM SPECIFICATIONS PURSUANT TO R.C.
2929.14(B)(1)(g).

## II. Law and Analysis

{¶ 12} Although Smith appealed his convictions in case Nos. CR0201601974, CR0201602143, and CR0201603061, his assignments of error all pertain to his convictions in case No. CR0201602143. We address each of his assignments in turn.

### A. Manifest Weight

{¶ 13} In his first assignment of error, Smith claims that his convictions for aggravated burglary and aggravated robbery, as well as the accompanying firearm specifications, were against the manifest weight of the evidence. Primarily, Smith contends that the trial court erred in finding B.S.'s testimony credible. He argues that B.S.'s testimony was necessary to convict Smith because the three victims identified only B.S. and were unable to identify Smith. He insists that B.S.'s testimony should not have been believed because he suffered from mental health issues and was engaged in heavy drug use the day the crimes were committed.

{¶ 14} When reviewing a claim that a verdict is against the manifest weight of the evidence, the appellate court must weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether the fact-finder clearly lost its way in resolving evidentiary conflicts so as to create such a manifest miscarriage of

7.

justice that the conviction must be reversed and a new trial ordered. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We do not view the evidence in a light most favorable to the state. "Instead, we sit as a 'thirteenth juror' and scrutinize 'the factfinder's resolution of the conflicting testimony.'" *State v. Robinson*, 6th Dist. Lucas No. L-10-1369, 2012-Ohio-6068, ¶ 15, citing *Thompkins* at 388. Reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 15} Although under a manifest-weight standard we consider the credibility of witnesses, we must nonetheless extend special deference to the credibility determinations of the fact-finder given that it is the fact-finder who has the benefit of seeing the witnesses testify, observing their facial expressions and body language, hearing their voice inflections, and discerning qualities such as hesitancy, equivocation, and candor. *State v. Fell*, 6th Dist. Lucas No. L-10-1162, 2012-Ohio-616, ¶ 14.

{¶ 16} It is well-recognized by Ohio courts that a witness's testimony may be relied upon to support a conviction even where that witness has admitted that he or she used drugs or alcohol and was high at the time of witnessing the events at issue. *See State v. Nitsche*, 2016-Ohio-3170, 66 N.E.3d 135, ¶ 44 (8th Dist.); *State v. Wells*, 8th Dist. Cuyahoga No. 98388, 2013-Ohio-3722, ¶ 130 (jury in murder case was able to judge credibility of witnesses who admitted being high on crack cocaine on day of murder). Where a witness has been examined about his or her drug use, the trier of fact

8.

can properly weigh the credibility of the witness' testimony. *State v. Medezma-Palomo*, 8th Dist. Cuyahoga No. 88711, 2007-Ohio-5723, ¶ 36-37 (trier of fact determines weight to be given to testimony of witnesses who were "consuming crack cocaine and heroin on a daily basis" before victim's murder); *State v. Petty*, 10th Dist. Franklin Nos. 11AP-716, 11AP-766, 2012-Ohio-2989, ¶ 41. The fact-finder is free to believe all, part, or none of the witness' testimony. *See Wells* at ¶ 130, citing *State v. Colvin*, 10th Dist. Franklin No. 04AP-421, 2005-Ohio-1448, ¶ 34.

{¶ 17} Here, both Smith and the state elicited testimony from B.S. about his heavy drug use on the day of the May 6, 2016 incident. As the fact-finder in this case, it was the responsibility of the trial judge to assess B.S.'s credibility. We cannot say that the trial judge clearly lost his way in finding B.S.'s testimony credible, especially given that (1) the trial judge had the opportunity to see and hear B.S.'s testimony in assessing his credibility, and (2) much of B.S.'s testimony was actually corroborated by other witnesses.

{¶ 18} Consistent with B.S.'s testimony, both H.L. and Ma.Li. testified that there were three perpetrators—one was white (B.S.), and two were African-American men who were unknown to them. H.L. confirmed that he had allowed B.S. to use his phone earlier in the evening and that B.S. hit him. Ma.Li. testified that one of the perpetrators threatened to shoot them, and H.L. confirmed that one of the two African-American men had the gun. H.L. said that this man ordered everyone to the floor and when Ma.Li. did not immediately comply, B.S. punched Ma.Li. and knocked him to the floor. Ma.Li.

9.

testified similarly. H.L. described that some of the men wore gloves, they ransacked his house, and they stole his Xbox, television, and the men's wallets and phones. And Detective Kowalski testified to finding a glove in the creek at the park.

{¶ 19} In addition to this, Smith himself corroborated portions of B.S.'s testimony. After Smith was arrested and booked into the county jail, Detective Kowalski listened to phone calls Smith made from the jail. Excerpts of the recordings of some of those calls were admitted into evidence at trial. In those excerpts, Smith talked about being asked to help get his friend's money back, he talked about the fact that he and another person had been called, and he talked about donning gloves that were in the truck.

{¶ 20} The trial judge was free to believe some, all, or none of B.S.'s testimony. We cannot say that the trial judge clearly lost his way in finding B.S.'s testimony credible, especially given that much of his testimony was corroborated. This simply is not one of the exceptional cases in which the evidence weighs heavily against conviction.

{¶ 21} Accordingly we find Smith's first assignment of error not well-taken.

### B. Sufficiency of the Evidence

{¶ 22} In his second assignment of error, Smith claims that his convictions for aggravated burglary and aggravated robbery—and the accompanying firearm specifications—were not supported by sufficient evidence and that the trial court erred in denying his Crim.R. 29 motion for acquittal. He maintains that there was no evidence that he entered H.L.'s residence with the purpose to commit a criminal offense or that he was in possession of a deadly weapon at that location.

10.

{¶ 23} A claim for insufficiency of the evidence and denial of a motion for acquittal are reviewed under the same standard. Whether there is sufficient evidence to support a conviction is a question of law. *Thompkins*, 78 Ohio St.3d at 386, 678 N.E.2d 541. In reviewing a challenge to the sufficiency of evidence, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." (Internal citations omitted.) *State v. Smith*, 80 Ohio St.3d 89, 113, 684 N.E.2d 668 (1997). In making that determination, the appellate court will not weigh the evidence or assess the credibility of the witnesses. *State v. Walker*, 55 Ohio St.2d 208, 212, 378 N.E.2d 1049 (1978).

{¶ 24} Under R.C. 2911.11(A)(2), "No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if * * * "[t]he offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control."

{¶ 25} Here, the state presented evidence that Smith went to H.L.'s home at B.S.'s request for the purpose of taking drugs and money from the occupants of the home. He barged into the home and brandished a weapon to subdue the occupants. We find that the evidence was sufficient to support his conviction for aggravated burglary.

{¶ 26} Under R.C. 2911.01(A)(1), "No person, in attempting or committing a theft offense, * * * shall * * * [h]ave a deadly weapon on or about the offender's person or

11.

under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it."

{¶ 27} The state presented evidence that Smith brandished a weapon and stole from the victims a television, an Xbox 360, IDs, cell phones, and keys. We find that this evidence was sufficient to support a conviction for aggravated robbery.

{¶ 28} Accordingly, we find Smith's second assignment of error not well-taken.

### C. Ineffective Assistance

{¶ 29} In his third assignment of error, Smith claims that he was provided ineffective assistance of counsel. He argues that his trial counsel failed to fully investigate the facts surrounding the aggravated burglary and aggravated robbery charges. Specifically, Smith contends that his trial counsel failed to subpoena phone records, which may have supported Smith's position that he was not with B.S. on the date the crimes were committed. He also complains that counsel deferred opening statement until Smith's case-in-chief, but then never gave an opening statement, and she failed to move for acquittal under Crim.R. 29(A) at the close of Smith's case-in-chief.

{¶ 30} In order to prevail on a claim of ineffective assistance of counsel, an appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process that the trial court cannot be relied on as having produced a just result. *State v. Shuttlesworth*, 104 Ohio App.3d 281, 287, 661 N.E.2d 817 (7th Dist.1995). To establish ineffective assistance of counsel, an appellant must show "(1) deficient performance of counsel, i.e., performance falling below an objective

12.

standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different." *State v. Hale*, 119 Ohio St.3d 118, 2008-Ohio-3426, 892 N.E.2d 864, ¶ 204, citing *Strickland v. Washington*, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *State v. Sanders*, 94 Ohio St.3d 150, 151, 761 N.E.2d 18 (2002).

{¶ 31} Properly licensed Ohio lawyers are presumed competent. *State v. Banks,* 9th Dist. Lorain No. 01CA007958, 2002-Ohio-4858, ¶ 16. To establish ineffective assistance of counsel, the defendant must show that counsel's performance fell below an objective standard of reasonableness and that the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *Strickland* at 688-692. As recognized in *Strickland*, there are "countless ways to provide effective assistance in any given case." *Id.* at 689. "Judicial scrutiny of counsel's performance must be highly deferential." *State v. Bradley*, 42 Ohio St.3d 136, 142, 538 N.E.2d 373 (1989), quoting *Strickland* at 689.

*1. Failure to make an opening statement.*

{¶ 32} Smith's trial counsel elected to defer making an opening statement until the beginning of Smith's case-in-chief. Despite having done so, she failed to give an opening statement at that time. Smith argues that this was ineffective assistance of counsel.

{¶ 33} The Ohio Supreme Court has held that "'trial counsel's failure to make an opening statement * * * does not automatically establish the ineffective assistance of counsel.'" *State v. Myers*, Slip Opinion No. 2018-Ohio-1903, ¶ 189, quoting *Moss v.*

13.

*Hofbauer*, 286 F.3d 851, 863 (6th Cir.2002). This is especially true where the case is being tried to the bench because in a bench trial, the judge is aware of "the nature of the case" and "the legal requirements of offenses that have been charged." *State v. Sewell*, 2d Dist. Montgomery No. 27562, 2018-Ohio-2027, ¶ 43, citing *State v. Cass*, 10th Dist. Franklin No. 99AP-1422, 2000 Ohio App. LEXIS 5192 (Nov. 9, 2000). Moreover, an appellant must articulate how the absence of an opening statement prejudiced him. *Myers* at ¶ 191, citing *Moss* at 864. "'[C]onclusory allegations are insufficient to justify a finding that an opening statement would have created the reasonable probability of a different outcome in his trial.'" *Id.*

{¶ 34} Here, Smith's case was tried to the bench. Moreover, Smith fails to explain how a different outcome would have been effected had trial counsel made an opening statement. We, therefore, conclude that trial counsel's failure to make an opening statement did not constitute ineffective assistance of counsel.

### 2. *Failure to investigate phone records.*

{¶ 35} Smith also claims that trial counsel was ineffective for failing to subpoena phone records that may have shown that B.S. did not telephone him on May 6, 2016.

{¶ 36} "A claim of ineffective assistance of trial counsel may exist where the record shows that the defendant's attorney failed to conduct a reasonable investigation into a defendant's case." *State v. Kennard*, 10th Dist. Franklin No. 15AP-766, 2016-Ohio-2811, ¶ 23. Nevertheless, it must still be shown that further investigation would have changed the outcome of the case. *See, e.g., State v. Royster*, 2d Dist. Montgomery

14.

No. 26378, 2015-Ohio-625, ¶ 37 (rejecting appellant's ineffective assistance claim where he "failed to establish that any further investigation would have changed the outcome of his case").

{¶ 37} Here, Smith has failed to show that the outcome of the case would have been different if trial counsel had subpoenaed and introduced phone records into evidence. We also observe that in the audio recordings of his telephone calls from the jail, Smith made reference to having received a phone call. Under these circumstances, we cannot say that there is a reasonable probability that, but for counsel's failure to present telephone records, the proceeding's result would have been different. *See e.g., State v. Simmons*, 4th Dist. Highland No. 13CA4, 2013-Ohio-2890, ¶ 25 (where the record contained no evidence that potential witnesses would have corroborated defendant's story, it was speculative whether reasonable probability existed that verdict might have been different if counsel requested continuance to subpoena witnesses).

### 3. Failure to move for acquittal.

{¶ 38} Finally, Smith argues that trial counsel was ineffective because she failed to move for acquittal at the end of his case-in-chief. A motion for acquittal under Crim.R. 29(A) challenges the sufficiency of the evidence. *State v. Brinkley*, 105 Ohio St.3d 231, 2005-Ohio-1507, 824 N.E.2d 959, ¶ 39. Given our resolution of Smith's second assignment of error rejecting his challenge to the sufficiency of the evidence, Smith is unable to show that there is a reasonable probability that the result of the trial would have been different had trial counsel moved for acquittal after his case-in-chief. In

15.

any event, in a bench trial, "the defendant's plea of not guilty serves as a motion for judgment of acquittal, and obviates the necessity of renewing a Crim.R. 29 motion at the close of all the evidence." *State v. Chatman*, 2d Dist. Montgomery No. 20595, 2005-Ohio-1930, ¶ 4, citing *Dayton v. Rogers*, 60 Ohio St.2d 162, 163, 398 N.E.2d 781 (1979).

{¶ 39} Accordingly, we find Smith's third assignment of error not well-taken.

### D. Sentencing

{¶ 40} In his fourth assignment of error, Smith claims that the trial court erred in imposing two consecutive prison terms for the firearm specifications attached to his aggravated burglary and aggravated robbery convictions. Although he acknowledges that R.C. 2929.14(B)(1)(g) would seem to contemplate consecutive sentences where a conviction for aggravated robbery is involved, he claims that the statute is poorly-worded and should be interpreted to require convictions *of two offenses listed in the statute* before a trial court may impose consecutive sentences for the accompanying specifications.

{¶ 41} R.C. 2929.14(B)(1)(a) sets forth the prison terms that a court shall impose for certain specifications, such as the firearm specifications of which Smith was convicted in case No. CR0201602143. R.C. 2929.14(B)(1)(b) provides that "[e]xcept as provided in division (B)(1)(g) of this section, a court shall not impose more than one prison term on an offender under division (B)(1)(a) of this section for felonies committed as part of the same act or transaction." In other words, *except as provided in R.C. 2929.14(B)(1)(g)*, where an offender is convicted of multiple felonies and multiple

16.

firearm specifications, but those convictions arise from a single act, only one term of imprisonment may be imposed for the specification.

{¶ 42} But R.C. 2929.14(B)(1)(g) provides that:

> If an offender is convicted of or pleads guilty to two or more felonies, if one or more of those felonies are aggravated murder, murder, attempted aggravated murder, attempted murder, *aggravated robbery*, felonious assault, or rape, and if the offender is convicted of or pleads guilty to a specification of the type described under division (B)(1)(a) of this section in connection with two or more of the felonies, the sentencing court shall impose on the offender the prison term specified under division (B)(1)(a) of this section for each of the two most serious specifications of which the offender is convicted or to which the offender pleads guilty and, in its discretion, also may impose on the offender the prison term specified under that division for any or all of the remaining specifications.

(Emphasis added.)

{¶ 43} Here, Smith was convicted of aggravated burglary *and* aggravated robbery arising from the May 6, 2016 incident. Because aggravated robbery is one of the offenses enumerated in subsection (B)(1)(g), the trial court imposed mandatory consecutive terms of imprisonment for the accompanying firearm specifications attached to those offenses. Smith argues that because he was convicted of only *one* of the

17.

enumerated offenses, multiple terms for the firearm specifications should not have been imposed.

{¶ 44} Smith acknowledges that in *State v. Welninski*, 6th Dist. Wood Nos. WD-16-039, WD-16-040, 2018-Ohio-778, ¶ 102, we recognized that the trial court was required to impose multiple consecutive terms for two three-year firearm specifications where one conviction was for an offense enumerated in subsection (B)(1)(g). But Smith urges that this court should hold otherwise under *State v. Zielinski*, 6th Dist. Lucas No. L-14-1108, 2016-Ohio-2668, ¶ 29.

{¶ 45} In *Zielinski,* appellant was convicted of two offenses listed in R.C. 2929.14(B)(1)(g)—murder and felonious assault. We held that the trial court was required to impose separate sentences for the two firearm specifications connected with those offenses. Despite Smith's suggestion to the contrary, *Zielinski* does not stand for the proposition that mandatory multiple terms would not have been required had only *one* of the appellant's convictions been for an offense enumerated in the statute. And in fact, other Ohio courts have rejected this argument.

{¶ 46} In *State v. Gervin*, 2016-Ohio-8399, 79 N.E.3d 59, ¶ 199 (3d Dist.), for instance, the appellant was convicted of felonious assault with a firearm specification, aggravated arson, and improperly discharging a firearm at or into a habitation with a firearm specification. Because "[a]ll of his convictions were felonies and one of them was of the type enumerated in R.C. 2929.14(B)(1)(g)," the appellate court held that "the trial court was required to impose two separate three-year prison terms for the firearm

18.

specifications and those terms must be consecutive to the prison terms imposed for the underlying offenses." *Id.*

{¶ 47} Similarly, in *State v. Murphy*, 8th Dist. Cuyahoga No. 98124, 2013-Ohio-2196, ¶ 8, the appellate court held that "the trial court was precluded from merging the firearm specification underlying the aggravated burglary with the firearm specification underlying the felonious assault" because felonious assault is one of the offenses enumerated in R.C. 2929.14(B)(1)(g). *See also State v. Price*, 10th Dist. Franklin Nos. 13AP-1085, 13AP-1086, 2014-Ohio-4065, ¶ 10-11 (concluding that the trial court was required by statute to impose two, three-year prison terms for the firearm specifications attendant to appellant's crimes of aggravated robbery and attempted aggravated burglary); *State v. Bushner*, 9th Dist. Summit No. 26532, 2012-Ohio-5996, ¶ 31 (recognizing that trial court was required to impose at least two prison terms for firearm specifications where appellant was convicted of four felonies, one of which was felonious assault).

{¶ 48} Because Smith was convicted of two felonies with two accompanying firearm specifications, and one of those felonies was aggravated robbery—an offense enumerated in R.C. 2929.14(B)(1)(g)—the trial court properly imposed two consecutive sentences for those specifications.

{¶ 49} Accordingly, we find Smith's fourth assignment of error not well-taken.

### III. Conclusion

{¶ 50} Smith's aggravated robbery and aggravated burglary convictions were not against the manifest weight of the evidence despite the fact that one of the key witnesses was under the influence of drugs at the time of the events giving rise to the charges. Smith's first assignment of error is, therefore, not well-taken.

{¶ 51} Smith's aggravated robbery and aggravated burglary convictions were supported by sufficient evidence where the state presented evidence that Smith went to the victim's home to take money and drugs, barged into the victim's home, and brandished a gun during the commission of the offense. Smith's second assignment of error is, therefore, not well-taken.

{¶ 52} Trial counsel was not ineffective for failing to make an opening statement, failing to investigate phone records, and failing to renew a Crim.R. 29 motion for acquittal. Smith's third assignment of error is, therefore, not well-taken.

{¶ 53} The trial court properly ordered two consecutive sentences for firearm specifications under R.C. 2929.14(B)(1)(g) where one of the felonies of which Smith was convicted was aggravated robbery. Smith's fourth assignment of error is, therefore, not well-taken.

{¶ 54} Accordingly, we affirm the December 6, 2016 judgments of the Lucas County Court of Common Pleas. Smith is ordered to pay the costs of this appeal under App.R. 24.

Judgments affirmed.

20.

State v. Smith
C.A. Nos. L-16-1306
L-16-1307
L-16-1308

 

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

 

Thomas J. Osowik, J.

James D. Jensen, J.

Christine E. Mayle, P.J.
CONCUR.

_____
JUDGE

_____
JUDGE

_____
JUDGE